Good morning. Good morning. May it please the court, my name is Jessica Post and I'm here on behalf of Mr. Ulanday. I would like to reserve three minutes for rebuttal. So the two issues before this court are, one, whether the BIA erred, and then, second, what is the appropriate remedy assuming that the BIA did err? Now, the first issue is whether the BIA erred in concluding that Mr. Ulanday was convicted or committed a generic theft crime. Has the government conceded that at this point or not? Because in recent communications, the government just talked about remand, and I think part of their argument initially was that Familiar II was not final, but it is final now, and there wasn't a petition for cert or anything like that. I would say that they have conceded that. I mean, their brief seemed to point out as much. However, they also just submitted a 48-J letter saying that the abstract of minutes may be evidence that the court can look at. So, I mean, I do think that their brief, they conceded it. They didn't discuss Pennular on the grounds that they were filing a petition for rehearing and that the mandate hadn't issued, and now since that time, the mandate has issued and the Pennular court denied the request for rehearing. So, given that, I mean, I would say the government has conceded and really the issue is the appropriate remedy. So I'll move forward to that if that's good for you guys. Well, you might, I guess if they don't concede it, you could address that on rebuttal or something like that. But in light of the changes in Ninth Circuit law over the last couple of years, if we agree that the government failed to make the showing now required by Pennular II, why shouldn't the panel remand the case to the BIA and consider further evidence? Well, I mean, I'd say there's sort of legal and equity reasons why that's not the appropriate decision. Now, first, I mean, the government has kind of put forth this test, and it's stating language from the Fernandez-Ruiz trial. I'm sorry, I can't hear you constantly. Could you speak up a little bit? Yeah, here, let me see if I, okay, sorry. The government has stated the test as it's pulled dicta from the Fernandez-Ruiz decision, which basically there is language in Fernandez-Ruiz that suggests that in some circumstances there could be a case where if the government relies on precedent that the case should go back to the BIA. However, the Fernandez-Ruiz court, even though it had that language, actually decided not to remand the case. It decided that in that setting remand was improper, and it really looked at several different factors for making that conclusion, and all of those factors are the same factors that are relevant here, the first being that determining whether a statute is a categorical theft crime or whether the modified categorical approach applies is really not an issue that's given to the BIA for its expertise, unlike the Ventura case, which involved changed circumstances in an asylum case. If you think about it from the standpoint, I mean, if there weren't a change in the law, you lose. So if there is a change in the law, and at the time they weren't required to produce any more than they produced, the only reason that, and I only speak for myself here, and the reason that I would say not to remand would be because they wouldn't be able to win anyway on what they had. Now, as a part of the case at the time, there wasn't in the record exactly what, you know, what happened beyond what they thought, because it was a categorical, they could prevail on the categorical. Now, if for a purpose of argument you assume that they cannot, we do know at some point in a record, because there was a request for summary affirmance, they submitted some documents trying to say how they would prevail on the modified categorical. Right. I mean. Can they win on those documents? Back before the BIA? You know, I'm not. If it went back? There's arguments that the government could make that Mr. Penular was a principal, but then there's also arguments, like I've looked at the record, and there's also arguments that can be made that he wasn't a principal. There's some sort of, you know, different language in the colloquy, and then also in the transcript with the immigration judge. So it's difficult, but really the point is, I mean, the government shouldn't at this point, I mean, the transcript is closed, and they shouldn't be submitting other evidence saying, hey, if we got another shot, we would do it right this time, and we'd be able to show. But the law was different then. It was a categorical, they won back then. Well, the thing is, though, just to address that point, back in, so the hearing was in 2003, and before 2003, basically what they're claiming now is they relied on a BIA decision. They didn't rely on a Ninth Circuit opinion. There wasn't a Ninth Circuit published opinion out there. But before 2003, there were two unpublished decisions, one unpublished decision saying that it was a modified categorical approach for this statute, and then there was an unpublished decision saying it was a categorical theft crime. So really what you have is you have at least notice to the government that the Ninth Circuit, when it actually decides to do a published opinion on the statute, would conclude that it was a modified categorical approach. How do you have that from unpublished opinions with 50 judges? You know, I mean. You mean how did they have notice? Well, they said because at the time there was no published opinion, right? That's right. These were unpublished opinions. Well, how would an unpublished opinion, when there are 50 judges that decide cases on the Ninth Circuit, how would that be some sort of tea leave that you should read? Because I'm telling you, there's three judge panel decisions out there that are unpublished that I don't agree with. So if I could get my hands on it, I wouldn't decide it the same way. Right. But, I mean, it all goes towards being prudent in determining what documents to introduce. I mean, the documents the government is now seeking to introduce, they were available back in 2003. When the government picked up the phone to put the order in for the documents, it could have asked for the plea colloquy, the plea transcript. Why should it have done that? Why should it do that? Why should the government be putting in a lot of stuff that just simply was not necessary at that time? The Ninth Circuit decided to make it necessary, and some people might think our decisions in that area are a little bizarre. Some people, not the Ninth Circuit judges, wouldn't think that. But the point is, you know, why is the government supposed to anticipate by putting in all kinds of stuff that just wasn't necessary at the time? It had a clear ruling that this was all it took, and that's what they put in in front of their trial court and their appeal court. Well, right. Okay. I mean, there's a couple things that you raised there. Sorry. There's a couple issues that you raised there. I mean, they had a clear ruling in that they had, in what you're calling a clear ruling, is their BIA, the BIA decision that they had. I mean, the BIA is not tasked with determining whether the modified categorical approach or the categorical approach applies to criminal and state statutes. Of course it is. It has to. How can it decide immigration cases without deciding that? But they're not. It's de novo review, and they aren't the ultimate arbitrator of that, and they don't receive deference for those opinions. So, I mean, it is an opinion that they give to guide their immigration judges, but it certainly doesn't receive deference at this point, you know, when the Ninth Circuit is reviewing that decision. Well, but they didn't do anything antithetical, and the Ninth Circuit had no antithetical law at that time. As far as we know, the Ninth Circuit agreed with the BIA. Well, sort of, although there's the two opinions that I pointed out, and then... Those are not opinions. Those are memorandum dispositions, which are not precedential. I know they're not precedential, but the issue here is notice, and the relevant rule on those cases, on those unpublished decisions, say that they can be used for purposes of notice, which is the government's claiming that they didn't have notice that this could possibly be the test, and I'm just saying that there were these two cases, and that Taylor had been around a long time, and that the Ninth Circuit had been applying the Taylor test in the immigration setting since 2000, so it would have been a prudent decision to introduce the couple documents that they now seek to introduce. What if the immigration judge had said it's an aggravated felony, it's a categorical crime, don't waste my time, I have ten cases out there, this is all that you need to do, then would they be in a different position? I mean, the court could have said, don't waste my time, this is all that's required under the law, don't waste my time. Then is your argument then that they're supposed to be in contempt of court with the judge, and still put this evidence on because they need to see at some point in the future, you know, the current act to predict that the Ninth Circuit is going to decide Vidal, Penelier 1, and Penelier 2? Right, no, I mean, I understand your point, but it's the BIA that's then reviewing the immigration judge's decision. The BIA in this case actually got the immigration's oral decision and said, I need to see a written one. I mean, it's the BIA that needs to make sure that the record there is sufficient for its conclusion that the individual committed, you know, a categorical, not a categorical, but a generic theft crime. Assuming you don't win that point, just hypothetically, I suppose there's no reason for us not to remand it, is there? Well, I mean, I would say the reasons why you shouldn't remand it are that the test really isn't what the government has articulated the test to be. I mean, the Fernandez-Ruiz court, Ruiz-Vidal, Penular, and now I want to say Meza-Castillo, a 2009 Westlaw 226047, those are all four cases that have dealt with the same setting, which is the categorical approach versus the modified categorical approach, and have decided that because of those factors that I just discussed, all the documents being available, notice that the ‑‑ If it's a modified categorical approach. The only ‑‑ we don't have all the documents available. As a matter of law, we can't take judicial notice of stuff that wasn't before the BIA, right? That's right. So all we really know is on the basis of what was presented to the BIA, that might meet a categorical, but this isn't categorical, it's noncategorical. Right. So that's what we know, and we know the BIA didn't decide it. That's right. On a noncategorical basis. That's right. So assuming, I said, assuming you don't win on the grounds, oh, well, you had your buddy, you don't get another one, is there any reason not to remand this to the BIA? I mean, other than the precedent that I've just discussed, and the fact that I can't think of other areas in the law where one party makes a strategic decision that's an error, and then they get another shot at trying to prove their case again. There are all kinds of those in administrative law. In fact, in administrative law, we often say the record's not sufficient to support what you did. We remanded it to you to develop the record properly. That's not unusual in administrative law, and this is an administrative law case, I think. Okay. I mean, in my time, I haven't encountered that as much. Would it be futile if we sent it back? I mean, is it, would your argument be there's no reason to send it back because they have no way to prove what they would have to prove? Well, I mean, I would be, I don't know that. I can't stand here right now and say based on the documents that, I mean, I've reviewed the record for this case, and I don't know. Well, but they did attach part of the proceedings as part of the summary affirmance. Right. And if that's all that they have, and this court felt that that was insufficient, then that would be the argument for futility. That's right, but I have. But you haven't reviewed that? I mean, I. You have, but you're not prepared to speak to that. That's right. I'm not prepared to state exactly what would happen, what the BIA would determine if they got the opportunity to look at those, look at that record again. Did you want to reserve some time for rebuttal? Yes. Thank you. We have about two minutes and 30 seconds left. Thank you. Good morning. May it please the Court. Good morning. Vanessa LaFleur, appearing on behalf of the Attorney General. The first point I'd like to make is that the government is not at all conceding what opposing counsel is suggesting. It's conceding in its brief. Panulia, too, certainly is binding precedent, and this Court is obviously bound to apply it. All right, but part of your argument before was that that's why, since it wasn't binding, you conceded that we have to follow Bedall, we have to follow Panulia once it becomes final. It's final now. Correct. And you were saying, and you recognized that, but you said basically it was wrongly decided. Well, wrong or right now, it's the law, so. I agree with you, Your Honor, and for the reasons that my colleague stated earlier, the record in this case is substantially similar to the record in that other case, and we would follow the same argument that the abstract. So if they lose, you lose? Well, we have had a little peek under the sheets of what you would put on as evidence because you did that for when you were trying to get summary affirmance at some point in the procedural history there. Is there more that you would put on than that? Your Honor, I believe in this case we do have a plea colloquy in which the defendant has stated that he did take the car. Is that more than was part of the summary affirmance? I'm not sure, Your Honor. The point of the matter remains is that because there was intervening case law here, Panulia, Vidal, and such, and because at the time the board and the immigration judge had this case before it, this particular clarm was categorically an aggravated felony theft offense, there wasn't any need for the government to do any additional stuff. I agree with you on that point, but what I'm saying is if it would be futile, if all you have is what you put in the record previously trying to get the summary affirmance, and we look at that and say that is not going to save the day anyway, what would be the purpose of a renoun? Unless you have more than that. Are you representing to me you have more than what you already put in the record on the summary affirmance? No, Your Honor, I'm not representing that. I'm not sure whether there is more than that. The fact remains that those documents aren't in this particular record, and if this Court disagrees with the government's arguments on Panulia and Vidal, it necessarily should remand back to the board, first for the board to reassess its decision in light of Panulia and Vidal, and also because based on Fernandez-Ruiz, those intervening decisions changed the law. As the dissent in Fernandez-Ruiz made clear, the board in this case didn't have the opportunity to apply the modified categorical approach to look at the documents, whatever additional documents there may be, such as a plea colloquy or whatever else there may be out there. Like I said, I don't know exactly what there is, but because the Ninth Circuit changed the law from the time the board issued its decision here until now, it should be given a chance to review those documents and determine whether or not this crime, this petitioner committed an aggravated felony theft offense based on the record it's going to have before. Did he plead no contest to this charge? No, he didn't. He pled guilty, Your Honor. Yes, we have the complaint, and then we have the abstract of judgment, which states, pled guilty to count one of the complaint, and in the crime box it says, take vehicle without owners consent. So the facts are substantially similar to the same first case that you heard earlier this morning. So it wasn't until Panulia that this Court held that the conviction records, which are similar to these, were insufficient, and then it wasn't until Vidal more than three years later, after the board's decision here, that the board was on notice that it needed to adduce any additional documentation that the alien had pled guilty to conduct other than accessory after-the-fact conduct. And based on those two points, it really is important that this case goes back to the board, as it is the administrative body that hears immigration cases, for it to be able to look at this case and others like it, given the substantial change in the law, so that it can determine whether or not records like these, applying the modified categorical approach, amount to an aggravated felony theft offense under the INA. If the Court has any other further questions, I'd like to conclude now. Thank you. Accordingly, for the reasons stated in the government's brief, the petition for review should be denied, or alternatively, this matter should be remanded for the board. Thank you. Those of you who got the last word, you've got about two minutes and change left. You know, I just wanted to point out that in the government's brief, it cites the language in Fernandez-Ruiz, but it doesn't cite a single Ninth Circuit decision actually remanding under facts such as these. Instead, I have identified four or five decisions where the Ninth Circuit has just granted the petition, and not remanded under these same circumstances, where the BIA or the immigration judge does not apply the modified categorical approach, and now seeks another opportunity to do it on remand. Were those cases where there was a change in the law? Well, there was Fernandez-Ruiz, which was a change in the law. And then there's Notash v. Gonzalez, which, you know, I didn't put that cite in my brief, but I have it. It's 427 F. 3rd, 693, which was actually a decision where the BIA relied on its own precedent and Supreme Court decision, and the Ninth Circuit in that case held that that was incorrect, and the immigration judge had not applied the modified categorical approach, had only applied the categorical approach, and the Ninth Circuit in that case granted the petition and did not remand the case. So there's just multiple cases in this area where the Ninth Circuit has held that remand isn't proper and that the petition should be granted. And, you know, finally, just to address your question, Judge Fernandez, a little bit earlier about other reasons why remand isn't proper. I mean, Mr. Ulanday, this case has been going on six years. If back in 2003 the full record was there, we wouldn't still be in this situation, and he wouldn't be in limbo. He spent four years in a detention center. The government filed five stays as this case progressed and opposed his request for an immigration, for a bail hearing, which he only got after filing a habeas petition before Judge Wake. So, I mean, there's a lot of equities that also go into the fact that... Well, except he also didn't have the law in his favor back then either. No, that's fair, and he asked for a request too, but it has gone on a long time, and he was in detention, and the government opposed his being released from detention. So law didn't favor him? Could he have just gone back? To the Philippines? Sure, yeah. So he made a choice to stay in detention until the law got better for him, right? Well, I don't know if he stayed in detention until the law got better. I think he stayed in detention as he wanted to bring his appeal to fruition. So he didn't necessarily know what was going to happen. All right, that's all. Thank you. Thank you, Ms. Post. Ms. Lafort, thank you as well. The case just argued is submitted. Ms. Post, we know you accepted this appointment on a pro bono basis. We appreciate it very much, and the fine job you did. Thank you. 0756875 Sanders v. Laidlaw Education Services is submitted on the briefs. The last case, then, to be argued is 0855612 Abel v. W.J. Sullivan.
judges: Thomas, Callahan, Fernandez